IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| JOSEPH L. WALLENDORF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:10-cv-04065-NKL |
| | ) | |
| UNION ELECTRIC COMPANY d/b/a | ) | |
| AMERENUE, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| INTERNATIONAL UNION OF | ) | |
| OPERATING ENGINEERS, LOCAL 148 | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Joseph L. Wallendorf ("Wallendorf") has sued his employer, Union Electric Company ("Ameren UE"), and his union, International Union of Operating Engineers, Local 148 ("Local 148"), for violations of 42 U.S.C. § 2000e, Title VII of the Civil Rights Act of 1964. Wallendorf's suit against Local 148 alleges retaliation for his filing of an age discrimination claim against Ameren UE. Pending before the Court is Local 148's Motion for Summary Judgment. [Doc. # 46]. For the following reasons, Local 148's Motion for Summary Judgment is GRANTED.

**I.     Factual and Procedural Background**

1

Local 148 is a labor organization representing employees in an industry affecting commerce within the meaning of the National Labor Relations Act, 29 U.S.C. §§ 152(4), (5), (6), (7), and the Labor Management Relations Act, 29 U.S.C. § 185. Local 148 is the collective bargaining representative for the production and maintenance employees of defendant Ameren UE.

Defendants Ameren UE and Local 148 have agreed to a procedure for the referral of temporary maintenance staffing by Local 148 to Ameren UE. Pursuant to this procedure, if Ameren UE has temporary maintenance staffing needs, Local 148 will make the necessary referrals in accordance with its Temporary Referral Worker ("TRW") System Rules. To participate in the TRW program, an applicant must register with Local 148 and provide information on the applicant's work history, skills and experience. Ameren UE then administers an employment test and informs Local 148 which applicants it will accept as referrals. A TRW applicant must pay a $10.00 monthly referral fee to stay on the list.

At various times subsequent to his retirement, Wallendorf registered on the TRW list maintained by Local 148. Wallendorf was referred to employment with Ameren UE by Local 148 on several occasions. On August 21, 2008, Wallendorf filed a charge alleging age discrimination against Ameren UE. The charge against Ameren UE alleges that Wallendorf applied for a supervisory position in April 2008, and that he believed he was not hired into the position due to his age.

On or about September 26, 2008, Wallendorf was referred to employment with Ameren UE by Local 148. [Doc. # 47-1, ¶ 6]. Wallendorf was originally contacted by Ken Grissom, who at that time was a headhunter on behalf of the Union to find temporary employees to staff the power outage at an Ameren UE facility in the Fall of 2008. [Doc. # 54-1, para. 3]. According to Wallendorf, prior to his start date: "Ken called back and with great remorse in his voice told me that I had indeed been hired and that he would have to find a place for me to work. I did not question him about this statement but I could not believe that I was still a problem at Callaway as he inferred and it was apparent that [Local 148's] Electric shop representative did not want me to work in the Electric Shop for which I was originally hired." [Doc. # 47-6, at 2]. On September 29, 2008, Wallendorf reported to work at Ameren UE pursuant to the referral, and remained employed as a temporary employee of Ameren UE until November 11, 2008. [Doc. # 47-9].

At no time during or after Wallendorf's September through November 2008 employment with Ameren UE did he file, or request that Local 148 file, a grievance on his behalf. [Docs. # 47-1, ¶ 7; # 47-5, ¶ 4]. This was because Wallendorf never had the formal opportunity to file a grievance, as Local 148 and its representatives avoided contact with Wallendorf by ignoring him when he approached them or when he said "hello" to them, and failed to discuss with Wallendorf his rights during the temporary employment. [Doc. # 54-1, paras. 5-6].[1]

---

[1]Because UE did not dispute in its reply the facts which are alleged by Wallendorf in his opposition to summary judgment, the Court must accept them as true for purposes of UE's

On or about February 18, 2009, Wallendorf filed with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunity Commission ("EEOC") identical charges of discrimination against Defendants Ameren UE and Local 148. The charges against Defendants were each given separate case numbers. [Docs. # 47-6; # 47-7]. These charges alleged:

> • "discrimination against [Wallendorf] by Ameren UE Callaway Plant management and International Union of Operating Engineers Local 148 Electrical Group Steward (T.J. McClure and Chief Steward Doug Williams)." [Doc. # 47-7, at 1].
>
> • When Wallendorf was notified that he was hired to work the temporary outage on September 26, 2008, "it was apparent that the Union's electrical shop representative did not want me to work in the electric shop for which I was originally hired." [Doc. # 47-6, at 1].
>
> • When Wallendorf talked to Ameren with respect to training not being scheduled, he was told that "there was some confusion from the hall (Local 148) and Ken Grissom about who [Wallendorf] was going to work for as a TRW." [Doc. # 47-6, at 3].
>
> • "[Wallendorf] had to bring in [his] own tools from home" because he was not issued a pass from the Local 148 Tool Crib. [Doc. # 47-6, at 4].

During Wallendorf's employment, Wallendorf requested help from other employees to perform some of his job tasks that required additional help, but Wallendorf's requests were denied by Local 148 and Ameren UE. [Doc. # 54-1, para. 8 (Wallendorf's affidavit)]. Additionally, Local 148 told Ameren UE not to allow Wallendorf to work with any other Local 148 personnel. [Doc. # 54-1, para. 7].

---

Motion for Summary Judgment.

On or about March 2, 2009, Wallendorf amended the charges he had filed at the EEOC and the MCHR against Defendants Ameren UE and Local 148. As with the original charge, the amended charges alleged identical conduct against both Defendants. [Docs. # 47-8; # 47-9].

The amended charges allege the following against both Defendants:

On August 21, 2008, I filed an age discrimination charge with MCHR case number E-08/08-33932 and EEOC case number 28E-2008-01933. On September 26, 2008 I was informed by the Respondent that I was hired and my start date was September 29, 2008. When I arrived on the start date, I found out I was not scheduled for training as required. The Administration personnel had no answers, they asked me to wait. I proceeded to take training anyway, that I knew I needed to regain my class 1 Electrical Worker status. On September 30, 2008 I spoke to a supervisor over training about the discrimination charge I had filed for not being interviewed for the training position. He declined to speak to me due to the case.
 I believe I was denied training in retaliation for filing a discrimination complaint against the Respondents.
 Between October 2, 2008 and October 17, 2008 I was transferred to several departments where I was not assigned any specific duties. Between October 17, 2008 and October 20, 2008 I was not given any assistance or support by the employees or supervisors. I was also denied work tools and had to bring my own tools. On November 11, 2008 I was discharged.
 I believe I was not supported, given assistance and denied access to work tools in retaliation for filing a discrimination complaint against the Respondents.
 As remedy, I am seeking an end to the discrimination, compensation for lost wages, compensation for my pain, suffering, and humiliation, and anything else the Commission deems just and proper.

[Docs. # 47-8, # 47-9].

Local 148 did not receive notice of the age discrimination charge against Ameren UE by any party or entity and was unaware of same until Wallendorf filed his retaliation charge against it. [Docs. # 47-12, ¶ 4; # 47-1, ¶ 2; # 47-5, ¶ 3].[2]

The EEOC mailed Wallendorf a right-to-sue notice on November 5, 2009, in connection with Wallendorf's charge of retaliation against Local 148. [Doc. # 47-11]. The notice shows service only on Ameren UE.

Wallendorf then commenced this action. He filed an amended complaint against Defendants Ameren UE and Local 148 on May 4, 2010. [Doc. # 31]. The amended complaint contained allegations of age and retaliation discrimination under both the Missouri Human Rights Act, Chapter 213 of the Missouri Revised Statutes, and the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623. On May 24, 2010, the Court dismissed all allegations brought pursuant to the Missouri Human Rights Act as well as the age discrimination claim asserted under the ADEA. [Doc. # 36]. Only Wallendorf's retaliation discrimination claim against Local 148 remains pending before the Court.

Wallendorf's amended complaint alleges the following retaliation charges against Local 148:

> Defendant [Local 148] refused to process Plaintiff's grievance because of his complaint of age discrimination. [Doc. # 31, para. 21].
>
> Defendant[] [Local 148] . . . discriminated against Plaintiff based upon age. [Doc. # 31, para. 22].

---

[2] Wallendorf does not specifically admit or deny this statement. Therefore, for purposes of summary judgment, it is deemed admitted. *See* Local Rule.

6

In its termination of Plaintiff, Defendant [Local 148] violated the Age Discrimination in Employment Act and discriminated against Plaintiff because of his age in that:
  a. Plaintiff is in an age group protected by the ADEA;
  b. Plaintiff was terminated;
  c. Defendant Union failed to process Plaintiff's grievance;
  d. Defendant Union had a duty to fairly represent Plaintiff by processing his grievance;
  e. Plaintiff's age was a motivating factor in the decision by Defendant to not properly represent Plaintiff[.] [Doc. # 31, para. 26].

Defendant retaliated against Plaintiff for his Complaint of age discrimination by the acts described above, and by termination of his employment. [Doc. # 31, para. 27].

## II.  Discussion

To establish a retaliation claim under Title VII, Wallendorf must show that: "(1) [he] engaged in protected conduct; (2) reasonable employees would have found the challenged retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct." *Recio v. Creighton Univ.*, 521 F.3d 934, 938-39 (8th Cir. 2008) (quoting *Brenneman v. Famous Dave's of Am., Inc.*, 507 F.3d 1139, 1146 (8th Cir. 2007)).  As to the third element concerning causal connection, Wallendorf must show at this stage of the litigation "some evidence of a causal link between the protected activity. . . and the subsequent adverse action." *Reich v. Hoy Shoe Co., Inc.*, 32 F.3d 361, 367 (8th Cir. 1994); *see also Kneibert v. Thomson Newspapers, Mich. Inc.*, 129 F.3d 444, 455 (8th Cir. 1997).

Wallendorf alleges that Local 148 retaliated against him for filing his age discrimination charge against Ameren UE. [Doc. # 31, paras. 21, 27]. Local 148 asserts that it had no knowledge that Wallendorf filed an age discrimination charge against

Ameren UE until Wallendorf filed his retaliation charge. [Doc. # 47, at 11]. Local 148 cites to three separate affidavits, which indicate that: "[Local 148] did not receive notice of the age discrimination charge against Ameren UE by any party or entity and was unaware of same until plaintiff filed his retaliation charge against [Local 148]." [Doc. # 47-12, para. 4 (affidavit of Donald Giljum, Business Manager of Local 148); *see also* Doc. # 47-5, para. 3 (affidavit of Kenneth R. Pritchett, Local 148's Chief Shop Steward at Ameren UE's Callaway plant, stating that he had no knowledge prior to plaintiff's filing of a retaliation charge that plaintiff had filed an age discrimination charge against Ameren UE); Doc. # 47-1, para. 2 (affidavit of Kenneth Grissom, who is responsible for coordinating the TRW program, stating same)]. Because it had "no knowledge" of Wallendorf's age discrimination claim against Ameren UE, Local 148 argues that there is no causal connection between Wallendorf's filing of his claim against Ameren UE and any alleged retaliatory conduct by Local 148. *See e.g.*, *Littleton v. Pilot Travel Ctrs., LLC*, 568 F.3d 641, 645 (8th Cir. 2009) (district court did not err in granting summary judgment dismissing retaliation claim when no causal connection could be inferred as employer had no knowledge of plaintiff's protected activity at time of its alleged retaliatory conduct).

Wallendorf contends that there remains an issue of material fact regarding whether there is a causal connection between Wallendorf's filing of his age discrimination charge against Ameren UE and Local 148's alleged retaliatory conduct. In support, Wallendorf states that there are no affidavits from T. J. McClure, Local 148 Group Steward, and

8

Doug Williams, Local 148 Chief Steward, testifying that they lacked prior knowledge that Wallendorf filed a discrimination charge against Ameren UE. Wallendorf also refers to Local 148's conduct and concludes that the union's conduct itself indicates it must have known about Wallendorf's claim against UE for age discrimination. Wallendorf also states that Ken Grissom, a member of Local 148 who had hired Wallendorf, "indicated to Plaintiff that the Union did not want to hire Plaintiff." [Doc. # 54, at 7].

The Court finds that Wallendorf's arguments are without merit. To defeat a motion for summary judgment, Wallendorf must point to "some evidence," not a lack of contrary evidence, to survive a motion for summary judgment. That there are no affidavits by McClure or Williams does not show that Local 148 did have knowledge of Wallendorf's claim against UE. The absence of these affidavits does not call into question the affirmative evidence that Local 148 did not know, nor mitigate Wallendorf's responsibility to show that McClure or Williams did have knowledge.

The Court also rejects as illogical Wallendorf's argument that Local 148's conduct was so adverse to him that the union must have been motivated by Wallendorf's claim against UE. Even if the union's conduct adversely affected Wallendorf, that does not show the conduct was because Wallendorf sued UE. The elements of a retaliation charge clearly distinguish between the elements of adverse action and a causal link. If adverse action could be construed to support the existence of a causal link as Wallendorf suggests, then the two distinct elements would fold into one. There can be many reasons for

9

adverse action and the burden is on Wallendorf to show that at least one reason was retaliation for Wallendorf's age discrimination claim against UE.

Wallendorf raises the fact that Ken Grissom indicated that the "Union did not want to hire Plaintiff." [Doc. # 54, at 7]. This statement stems from Wallendorf's assertion in his EEOC filing that "it was apparent that [Local 148's] shop representative did not want me to work in the Electric Shop for which I was originally hired." [Doc. # 47-6, at 2]. While this example may speak to Local 148's motivation, without more it does not demonstrate that Local 148 knew that Wallendorf had filed an age discrimination complaint against Ameren UE. Indeed, Wallendorf noticeably responded to Local 148's assertion in its statement of facts that "[Local] 148 did not receive notice of the age discrimination charge against Ameren UE by any party or entity and was unaware of same until [Wallendorf] filed his retaliation charge against it," [Doc. # 47, para. 11], by stating neither "admit" or "deny," in contrast to what Wallendorf did for all of Defendant's other asserted uncontroverted material facts. [Doc. # 54, para. 11]. Rather, Wallendorf "recognized" what was stated in the affidavits cited to by Local 148, and then listed examples of alleged retaliatory conduct.

The Court is aware that the Eighth Circuit Court of Appeals has held that if an employer suspects that an employee has engaged in protected activity, then the existence of a causal link remains an issue of material fact. *See Reich v. Hoy Shoe Co., Inc.*, 32 F.3d 361, 367-68 (8th Cir. 1994). Here, however, the evidence cited by Wallendorf fails to even provide evidence of a suspicion by Local 148 that Wallendorf had filed an age

claim against UE. Wallendorf relies only on evidence of Local 148's alleged misconduct to infer that there existed a causal connection and that is insufficient as a matter of law.

## III. Conclusion

Accordingly, it is hereby

ORDERED that Local 148's Motion for Summary Judgment [Doc. # 46] is GRANTED.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: February 7, 2011  
Jefferson City, Missouri