IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JOSEPH L. WALLENDORFF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:10-cv-04065-NKL |
| ) | |
| UNION ELECTRIC COMPANY d/b/a ) | |
| AMERENUE, ) | |
| ) | |
| and ) | |
| ) | |
| INTERNATIONAL UNION OF ) | |
| OPERATING ENGINEERS, LOCAL 148 ) | |
| ) | |
| Defendants. ) | |

ORDER

Joseph L. Wallendorff ("Plaintiff") sued his employer, Union Electric Company ("Ameren UE") and his union, International Union of Operating Engineers, Local 148, for age discrimination and retaliation. The Court has previously resolved all of Plaintiff's claims except for his retaliation claim against Ameren UE violations of 42 U.S.C. § 2000e, Title VII of the Civil Rights Act of 1964. For the following reasons, Ameren UE's Motion for Summary Judgment on this claim is now GRANTED.

**I.     Factual and Procedural Background**[1]

---

[1] The Court has considered the parties' statements of undisputed fact which are supported by evidence. In considering the pending motion, the Court has drawn all inferences in favor of the non-movant.

1

Plaintiff was employed by Ameren UE at the Callaway Nuclear Plant ("Callaway") as a Nuclear Electrical Mechanic from 1984 to 1999. Plaintiff later transferred to a different facility at his request, and worked as a Serviceman until he voluntarily retired in 2004. Throughout Plaintiff's employment with Ameren UE, he was a member of International Union of Operating Engineers, Local 148, formerly a defendant in this action ("Local 148").

In April 2008, Plaintiff applied for a full-time position as a supervisor in Callaway's Training Department, a management position. Plaintiff's application for the position was reviewed by Ameren UE employee, Matthew Arri. Plaintiff was not selected for the position. Plaintiff filed a charge of discrimination claiming he was not selected for the training supervisor position on the basis of age. Ameren UE's human resource department interviewed individuals connected with the selection process and only individuals directly related to Plaintiff's age discrimination charge were told about the charge. These employees were instructed to keep information regarding the charge confidential and were reminded of Ameren's policy prohibiting retaliation. Employees of Local 148 and the Facilities Maintenance workgroup at Callaway were not informed of Plaintiff's charge.

Retired Callaway employees are occasionally offered temporary employment, and are permitted to work for Ameren UE a maximum of 1,000 hours per calendar year. Temporary employment is not guaranteed, and at no time did Ameren UE promise or

2

agree to hire Plaintiff after his retirement. Following his retirement, Plaintiff was hired as a temporary employee three times.

Approximately every eighteen months, Callaway hires hundreds of temporary workers to assist in the maintenance, repair, and refuel work while Callaway's reactor is refueled. These refueling periods are referred to as "refuels" or "outages" and each refuel is given a consecutive number. Refuels typically last approximately six weeks. The goal is to complete all of the required work in the shortest period of time. Temporary workers who work during refuels are required to successfully complete training during their temporary employment.

Refuel 16 began approximately October 11, 2008, and concluded on November 8, 2008. Local 148 operates a Temporary Referral Worker ("TRW") program, in which a list of Local 148 members is compiled and eligible TRW workers are referred to Callaway for hire during outages (the "Referral List"). Local 148 members who wish to be considered for TRW work must pay a $10.00 monthly referral fee to stay on the Referral List. Plaintiff paid to be on the list prior to being hired for Refuel 16. Although Plaintiff had in the past not been on the Referral List–for example, he did not pay to be on the Referral List in 2006–he had once performed temporary work at Callaway through Manpower Professionals, a third-party staffing company.

Ken Grissom, an Ameren UE employee, is the Referral and Training Coordinator for Local 148. Grissom determines if there are Local 148 members qualified and available for temporary work and submits the Referral List. In September 2008, Ken Grissom

contacted Plaintiff about working as a TRW for Refuel 16. Grissom had no knowledge of Plaintiff's discrimination charge against Ameren UE. In a letter dated September 22, 2008 and signed by Arri–who had reviewed Plaintiff's April 2008 application for supervisor–, Ameren UE offered Plaintiff a TRW position for Refuel 16 as an electrical maintenance technician. Plaintiff was the only TRW hired as an electrical maintenance technician for Refuel 16. Plaintiff was instructed to report to work at Callaway on September 29, 2008.

Shortly before Refuel 16 began, Callaway began a new program for generating training of temporary employees, and there were several glitches in the process regarding training schedules. For Refuel 16, Callaway processed more than 800 requests for access. Anna Lee, Supervisor of Access Authorization and Fitness for Duty, was in charge of staff who prepared in-processing packets for the incoming temporary workers. During Refuel 16, Anna Lee was not aware that Plaintiff had filed an age discrimination claim.

Plaintiff's packet did not contain a training schedule, but he did receive a password to log in to Ameren UE's computer network for training. Plaintiff asked both administrative personnel and John Neudecker, Ameren UE's Superintendent for Labor Relations, why he did not receive a training schedule. Neudecker responded that they "didn't know [yet] what they were going to do with" Plaintiff, [Doc. #74-7, at 67:18-25 (Deposition of Plaintiff)], and administrative personnel recommended that he just wait. Rather than wait, Plaintiff began his training without a training schedule. Most of the required training is computer-based and self-led and Plaintiff was familiar with Ameren UE's computer-based training because of his past employment at Callaway. On one

4

occasion, he encountered difficulty with a training supervisor who did not want him to participate in a class without a schedule. However, Plaintiff was allowed to sit in on the class when it turned out that there was an empty seat. Although Plaintiff never received a training schedule, Plaintiff received all the training required for his TRW position.

On September 30, 2008, Plaintiff spoke to Bob Barton in the Training Department. Plaintiff did not complain that he was not receiving training, but rather he talked about his age case. [Doc. # 77-9, at 4]. Thus, Barton was not aware that Plaintiff was denied any training. Because Plaintiff's discrimination charge remained under investigation, Barton told Plaintiff that he could not respond to Plaintiff's questions about that charge.

Plaintiff's assigned supervisor at the time of his hiring was Dennis Kraftor, a supervisor in the Electrical Maintenance Shop. The Electrical Maintenance Shop at Callaway, however, did not ask for Plaintiff, [Doc. # 77-3 (email from Neudecker, dated October 2, 2008)], yet Ameren UE was obligated to hire Plaintiff pursuant to an agreement with Local 148. In an email dated September 30, 2008, Neudecker wrote to Grissom that after Plaintiff finished with in-processing, Plaintiff should report to the Electrical Shop. Neudecker further wrote that he would obtain the name of Plaintiff's supervisor later that day.

Plaintiff then reported to Derek Fanguy, the General Supervisor for the Electrical Maintenance Department. Brent Jungmann, the Electrical Superintendent at Callaway, assigned Plaintiff to work with Day and Zimmerman, an outside electrical contractor.

Jungmann had never met Plaintiff before Refuel 16 and knew nothing about him or that Plaintiff had filed an age discrimination claim.

During outages, temporary workers are assigned to work on an as-needed and as-qualified basis. In many instances, permanent Callaway employees are assigned to tasks specific to the outage, and temporary workers are assigned to routine tasks. It is a violation of Local 158's collective bargaining agreement when employees who are hired through the union are assigned to work for another company.

On October 3, 2008, Plaintiff reported to Lonnie Stilwell, Electrical Superintendent for Day and Zimmerman. Plaintiff worked for Day and Zimmerman for approximately three days. [Doc. # 74-7, at 53:11-13]. He was first assigned to work with Day and Zimmerman electricians "to do jobs within the plant and make sure they don't make a mistake and don't do anything they're going to get in trouble for and kind of watch over them." [Doc. # 74-7, at 53:24-55:2]. After Plaintiff had finished with supervising one task, J.D. Enloe, a working supervisor with Day and Zimmerman, disagreed with what Plaintiff was doing and advised Plaintiff to speak with Stilwell. Stilwell told Plaintiff to sit in an office and not to do anything. Because Plaintiff thought that instruction was for the entire outage, he spoke with Joe Simmers, the Ameren UE supervisor over Day and Zimmerman's workers.

In an email dated October 8, 2008, Fanguy informed Grissom that he needed a copy of Plaintiff's recent resume, or equivalent documentation, to prove that Plaintiff was qualified to perform assigned tasks. [Doc. # 77-17]. On October 8, 2008, Jungmann

assigned Plaintiff to the Facilities Maintenance workgroup. There Plaintiff was supervised by Sherry Knoepflien. [Doc. # 74-4, at 55:9-56:19]. Facilities Maintenance is responsible for non-production equipment. Because work that supports the plant's power production generally takes priority, there was a backlog of maintenance tasks for Plaintiff to perform. [Doc. # 74-2, para 2 (Affidavit of Knoepflein)]. While working under Knoepflein, Plaintiff primarily performed general maintenance tasks, including working on toilets.

After being assigned to Facilities, Plaintiff encountered Enloe, the Day and Zimmerman supervisor with whom he had a disagreement, who asked, "You still here?" and snickered.

There is a toolcrib at Callaway from which employees, including TRWs, can borrow needed tools. The tool room attendants, who check the tools out to employees, are members of Local 148. Tools are kept in the Facilities Maintenance work area and are available for use. During Refuel 16, Plaintiff informed Knoepflein that a Local 148 member had refused to issue him tools. Knoepflein told Plaintiff she would get the tools he needed. Plaintiff also brought in his own plumbing tools from home to keep the toilets working.

Due to the scope of the work conducted during an outage, critical jobs are given priority, supervisors are not always available to provide work briefs, and electricians are not always available for backup. Non-critical jobs are postponed until adequate personnel can be available. One example of a job that is considered critical by the Fire Engineer is

the "Fire Systems" at the training center, yet Plaintiff was denied assistance to complete this job. [Doc. # 77-1, ¶ 8 (Affidavit of Plaintiff)].

Plaintiff worked full-time during Refuel 16, and was kept busy, despite Plaintiff's difficulty in getting assistance on electrical work that required the presence of another electrician for safety reasons. Plaintiff also did not receive work briefs from the Electrical Department that he requested because the supervisor was too busy. [Doc. # 74-8, at 76:12-17 (Deposition of Plaintiff)]. However, Plainitff eventually obtained the help he needed from the Facilities Maintenance workgroup to complete certain assigned tasks. There were also many tasks that Plaintiff was able to perform alone. Knoepflein stated that Plaintiff performed "satisfactorily," and indicated that she "would like to have his continued help." [Doc. # 74-2, ¶¶ 4-5 (Affidavit of Knoepflein)].

Plaintiff received the same pay and overtime compensation as the other Local 148 TRWs. No Ameren UE employee, other than Plaintiff's son, talked to Plaintiff about his age discrimination case.

On November 7, 2008, at the conclusion of Refuel 16, Plaintiff was released from his TRW position. The majority of the other TRWs were also released at or around the same time. No electricians stayed on as temporary workers after November 7. Between Refuel 16 and Refuel 17, no temporary workers were hired by Union Electric as electricians for Callaway.

Refuel 17 began in April 2010 and concluded in June 2010. Plaintiff's neighbor, who is in management at Callaway, had asked management to bring Plaintiff in to work

8

Refuel 17. However, Plaintiff did not seek a TRW position for Refuel 17, had not paid monthly referral fees in order to be placed on the Referral List at the time of Refuel 17, and was not hired for Refuel 17.

On or about August 21, 2008, Plaintiff filed a Charge of Discrimination with the Missouri Commission on Human Rights, alleging that Ameren UE had discriminated against him based on his age. On September 12, 2008, mail was sent by the Equal Employment Opportunity Commission to Ameren UE's St. Louis office with notices of Plaintiff's charge. On or about February 18, 2009, Plaintiff filed identical Charges of Discrimination with the Missouri Commission on Human Rights and the Equal Employment Opportunity Commission alleging retaliation discrimination by Ameren UE and Local 148; he later amended the charge. The Amended Charge alleged the following against both defendants:

> On August 21, 2008, I filed an age discrimination charge with MCHR case number E-08/08-33932 and EEOC case number 28E-2008-01933. On September 26, 2008 I was informed by the Respondent that I was hired and my start date was September 29, 2008. When I arrived on the start date, I found out I was not scheduled for training as required. The Administration personnel had no answers, they asked me to wait. I proceeded to take training anyway, that I knew I needed to regain my class 1 Electrical Worker status. On September 30, 2008 I spoke to a supervisor over training about the discrimination charge I had filed for not being interviewed for the training position. He declined to speak to me due to the case.
> 
> I believe I was denied training in retaliation for filing a discrimination complaint against the Respondents.
> 
> Between October 2, 2008 and October 17, 2008 I was transferred to several departments where I was not assigned any specific duties. Between October 17, 2008 and October 20, 2008 I was not given any assistance or support by the employees or supervisors. I was also denied work tools and had to bring my own tools. On November 11, 2008 I was discharged.

> I believe I was not supported, given assistance and denied access to work tools in retaliation for filing a discrimination complaint against the Respondents.
> As remedy, I am seeking an end to the discrimination, compensation for lost wages, compensation for my pain, suffering, and humiliation, and anything else the Commission deems just and proper.

[Doc. #77-5].

The EEOC mailed Plaintiff a right-to-sue notice on November 5, 2009, in connection with Plaintiff's charge of retaliation. [Doc. #47-11].

Plaintiff then commenced this action. He filed an amended complaint against Defendants Ameren UE and Local 148 on May 4, 2010. [Doc. # 31]. On May 24, 2010, the Court dismissed all allegations brought pursuant to the Missouri Human Rights Act as well as the age discrimination claim asserted under the ADEA. [Doc. # 36]. The Court also granted summary judgment as to Plaintiff's retaliation discrimination claim against Local 148. [Doc. # 67]. Only Plaintiff's retaliation discrimination claim against AmerenUE remained pending before the Court.

Plaintiff's amended complaint alleges the following retaliation charges against Ameren UE:

> Defendant Ameren hired Plaintiff on September 24, 2008, and thereafter retaliated against Plaintiff for Plaintiff's Complaint of age discrimination, in the following ways:
>     a. failure to provide training to Plaintiff;
>     b. failure to assign Plaintiff to appropriate duties;
>     c. failure to provide Plaintiff with tools.
> Defendant Ameren discharged Plaintiff on November 11, 2008, in retaliation for Plaintiff's Complaint of age discrimination.

[Doc. # 31, ¶ 19].

## II. Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the non-moving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a district court must look at the record and any inferences to be drawn from it in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248.

## III. Discussion

Plaintiff alleges that Ameren UE retaliated against him for filing an age discrimination complaint by failing to provide training to Plaintiff, failing to assign Plaintiff to appropriate duties, and failing to provide Plaintiff with tools. He also claims that Ameren UE retaliated against him by refusing to retain him as a temporary worker

after Refuel 16 was completed or to rehire him for Refuel 17, and because some fellow union members would not talk to him while he worked on Refuel 16.

To establish a retaliation claim under Title VII, Plaintiff must show that: "(1) [he] engaged in protected conduct; (2) reasonable employees would have found the challenged retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct." *Recio v. Creighton Univ.*, 521 F.3d 934, 938-39 (8th Cir. 2008) (quoting *Brenneman v. Famous Dave's of Am., Inc.*, 507 F.3d 1139, 1146 (8th Cir. 2007)).

There is no dispute that Plaintiff engaged in conduct that is protected activity - filing an age discrimination complaint against Ameren UE. Further Plaintiff has shown that Ameren UE failed to provide the Plaintiff a training schedule sheet, assigned him to a private contractor and to facilities maintenance instead of electrical maintenance and did not retain him as a temporary worker after Refuel 16 was completed or rehire him for Refuel 17. It is also undisputed that some fellow union members would not talk to him and he was not automatically given tools by Ameren UE, but was told by his supervisor that she would get the tools that he requested. However, to establish a prima facie case of retaliation discrimination, Plaintiff must show that these actions were materially adverse to him and were done by Ameren UE because Plaintiff filed an age discrimination complaint against it. He has not met his burden to do so.

First Plaintiff has not established that his failure to get a training schedule and his failure to get access to tools until he asked for them were materially adverse actions.

"Petty slights, minor annoyances, and simple lack of good manners" will not rise to the level of materially adverse treatment. *Clegg v Arkansas Dept of Correction*, 496 F. 3d 922, 929 (8th Cir. 2007). As for rudeness by fellow union workers, Plaintiff has failed to show that Ameren UE was responsible for that conduct or that the conduct was materially adverse to Plaintiff. This also falls in the category of petty slights and lack of good manners.

Second, as for Plaintiff's assignment to a private contractor in violation of union rules and assignment to facilities maintenance instead of electrical maintenance, Plaintiff has failed to show that this conduct was caused by Plaintiff's age discrimination complaint. The Ameren UE employee who made these assignments testified that he was not aware of Plaintiff's age discrimination complaint and there is no evidence that any other Ameren UE employee was involved in those assignments. Although Plaintiff testified that some unidentified union worker asked Plaintiff's brother about Plaintiff's age discrimination claim, that inadmissible hearsay is not sufficient to refute the direct testimony of the decision maker that actually made Plaintiff's work assignments. Even in *Reich* v. *Hoy Shoe Co., Inc.*, 32 F.3d 361, 367-68 (8th Cir. 1994), where the inquiry of the Court of Appeals focused on whether mere suspicion as opposed to knowledge was required, the evidence was that the president of the company was insistent on getting the name of the employee who filed an OSHA complaint against the company so that he could "take care of the problem"; the president told the OSHA inspector that he suspected the complainant was a woman who filed complaints in the past; and based on his

interaction with the president, the OSHA inspector thought that the president would "harass the complainant if he knew who it was." *Id.* at 364. Plaintiff has submitted no evidence even close to this to support his contention that everyone at Ameren UE knew about his age discrimination claim.

Third, as for Ameren UE's failure to keep Plaintiff on as a temporary worker after Refuel 16 was completed, the undisputed evidence is that Ameren UE did not keep the majority of temporary workers on that were hired for Refuel 16. As for Ameren UE's failure to rehire Plaintiff for Refuel 17, it is undisputed that Plaintiff did not seek a position for Refuel 17 and did not pay the $10 fee to get on the union's referral list that was relied on by Ameren UE to find temporary workers for its refuels. Therefore no reasonable juror could conclude that Ameren UE refused to employ Plaintiff in these union positions as a result of his filing an age discrimination claim.

Lastly, Plaintiff argues that the only explanation for all of this conduct was retaliation, but showing materially adverse conduct is not enough. There must be some actual evidence that the conduct was in retaliation for protected activity. It would conflate the two elements if a juror could infer retaliatory animus simply because an employee was adversely affected by an employer's conduct.

Because Plaintiff has not presented sufficient evidence to establish a prima facie case, Ameren UE's Motion for the Summary Judgment is granted. [2]

---

[2] Alternatively, summary judgment is proper because Plaintiff has not presented evidence that Ameren UE's legitimate, non-discriminatory reasons for its actions were pretext for discrimination.

## III. Conclusion

Accordingly, it is hereby

ORDERED that Ameren UE's Motion for Summary Judgment [Doc. # 73] is GRANTED.

                                                s/ NANETTE K. LAUGHREY
                                                NANETTE K. LAUGHREY
                                                United States District Judge

Dated: July 5, 2011
Jefferson City, Missouri